UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
J & J SPORTS PRODUCTIONS, INC.

      Plaintiff,      MEMORANDUM AND ORDER
                  15-CV-3771
 - against –


MONTE LIMAR SPORTS BAR INC.
d/b/a MONTE LIMAR SPORTS BAR
and YAHAIRA SOTO

      Defendants.
------------------------------------------------------x
GLASSER, Senior United States District Judge:

  Plaintiff J & J Sports Productions, Inc. ("J & J" or "Plaintiff") alleges various violations of the Federal Communications Act of 1934, codified at 47 U.S.C. §§ 553 and 605, against defendants Monte Limar Sports Bar Inc ("Monte Limar") and its principal, Yahaira Soto ("Soto"). Defendants were duly served but failed to appear. J & J obtained a certificate of default and now moves the Court to enter default judgment and award damages. For the reasons stated herein, Plaintiff's motion is GRANTED in part and DENIED in part.

## **BACKGROUND**

  Plaintiff has initiated hundreds of cases in this District, and has moved for default judgment in over one hundred of them. The facts of each case, including this one, are virtually identical. J & J licenses the rights to exhibit closed-circuit, pay-per-view television events. ECF 1, Complaint ("Complt."), at ¶¶ 8, 10. Commercial establishments contract with J & J to access a closed-circuit event and televise it to their clientele in exchange for a fee. Id. at ¶ 10. Transmission of the events is electronically coded, and can only be accessed with electronic decoding equipment provided to those establishments that contract with J & J. Id. at ¶¶ 11, 13.

1

J & J owned the exclusive distribution rights in New York to the May 3, 2014 boxing match between Floyd Mayweather Jr. and Marcos Maidana (the "Match"). Commercial establishments in New York that exhibited the Match were required to obtain authorization from J & J. Id. at ¶¶ 7, 10. J & J advertised the Match on a rate sheet (the "Rate Sheet"), which lists the cost to televise the Match based on the capacity of the establishment. ECF 15-3.

Monte Limar is an establishment located in Queens, New York. Complt. at ¶ 5. Monte Limar did not obtain the required authorization from J & J to broadcast the Match, but nonetheless intercepted and televised it on its premises. Id. at ¶¶ 12, 14. J & J submits an affidavit from a third party auditor who swears she visited Monte Limar on May 4, 2013 at 12:50 a.m. and witnessed the Match broadcast on seven televisions while approximately 100 patrons were present. ECF 15-2. The affidavit states that there was no cover charge for admission and that the establishment did not advertise or promote the telecast in any way. Id.

J & J initiated this action on June 29, 2015, alleging various violations of the Federal Communications Act, 47 U.S.C. §§ 553 and 605. Defendants were duly served on July 22, 2015, but never appeared.[1] ECF 4, 5, 13-3; ECF 15, Aff. of Plaintiff's Counsel, at ¶ 1. A certificate of default was entered on September 3, 2015. ECF 7. J & J moved for default judgment on January 6, 2016. ECF 10. After this Court identified a number of deficiencies in its moving papers,

---

[1] The defendants were properly served. Under Fed. R. Civ. P. 4(h)(1)(B), service on a corporation is complete if the summons and complaint are delivered to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Plaintiff served Monte Limar at its business address by delivering the pleadings to John Doe, who was identified as the managing agent and who affirmed he was authorized to accept service on behalf of Monte Limar. ECF 4. Defendant Soto is an individual and could be served in accordance with the rules of New York. Fed. R. Civ. P. § 4(e)(1). Soto was served at Monte Limar Sports Bar, allegedly her actual place of business, by delivering a copy of the summons and complaint to John Doe, her co-worker, and mailing a copy of the pleadings addressed to Soto to Monte Limar Sports Bar, in satisfaction of New York C.P.L.R § 308(2). ECF 5.

2

J & J withdrew the motion. ECF 11. J & J moved for default judgment again on March 17, 2016, which motion is now before the Court. ECF 14.

## DISCUSSION

### I. Legal Standards

#### A. *Default Judgment*

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for obtaining a default judgment. Step one requires the court clerk to enter the defendant's default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. § 55(a). Plaintiff then moves for default judgment, and it "remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action . . . ." See Labarbera v. ASTC Labs., Inc., 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotation marks omitted). The court must accept plaintiff's "factual allegations as true and draw all reasonable inferences in its favor," while also determining whether plaintiff's allegations establish defendant's liability as a matter of law. Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009). The court may "require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action." Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

#### B. *Communications Act of 1934*

Section 553 of the Communications Act provides that a person shall not, without authorization, "intercept or receive or assist in intercepting or receiving any communications service offered over a cable system." 47 U.S.C. § 553(a)(1). Similarly, Section 605 states that an unauthorized person may not "intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communications to any person." 47 U.S.C. § 605(a).

## II. Liability

Plaintiff asserts claims under Sections 553 and 605 of the Communications Act. Although conduct may violate both provisions, "in such circumstances, the court should award damages only under Section 605." J & J Sports Prod., Inc. v. El Ojo Aqua Corp., 13-CV-6173 (ENV) (JO), 2014 WL 4700014, at *2 (E.D.N.Y. Aug. 29, 2014), R&R adopted, 2014 WL 4699704 (E.D.N.Y. Sept. 22, 2014) (citing cases). Plaintiff is entitled to damages under Section 605, so the Court need not address Plaintiff's other claims.

A. *Monte Limar*

Plaintiff has sufficiently pled a valid claim for relief against Monte Limar under Section 605. J & J had an exclusive license to broadcast, distribute and sublicense the Match in New York. The only way Monte Limar could legally broadcast the Match was by contracting with J & J. Complt. at ¶¶ 8, 10. Monte Limar did not obtain the proper authorization from J & J to broadcast the Match. Id. at ¶ 12. Nonetheless, Monte Limar broadcasted the event to 100 people at its establishment on May 3, 2014. Id. at ¶ 14. Courts in this District have repeatedly held that Plaintiff's identical allegations are sufficient to plead a claim for relief under 47 U.S.C. § 605. J & J Sports Prods., Inc. v. LX Food Grocery Inc., No. 15-CV-6505 (NGG)(PK), 2016 WL 6905946, at *2 (E.D.N.Y. Nov. 23, 2016) (citing cases). As such, Monte Limar is liable for infringement under Section 605.

B. *Yahaira Soto*

Plaintiff also alleges that Soto is liable in her individual capacity as an officer, director, shareholder, or principal of Monte Limar. Complt. at ¶¶ 5, 15. A corporation's officers and directors are not liable for the corporation's infringement "unless they participate in or have knowledge of the violation." J & J Sports Prods., Inc. v. Emily Bar Rest. Inc., No. 15-CV-6499

4

(RJD)(SMG), 2016 WL 6495366, at *2 (E.D.N.Y. Sept. 27, 2016), R&R adopted, 2016 WL 6495526 (E.D.N.Y. Nov. 2, 2016). "To establish a violation of 47 U.S.C. § 605(a) by an individual defendant, plaintiff must show that the individual defendant 'authorized' the violations set forth in the complaint." J & J Sports Prods., Inc. v. Benson, No. 06-CV-1119 (CPS), 2007 WL 951872, at *7 (E.D.N.Y. Mar. 27, 2007); see also Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc., 118 F.3d 955, 971 (2d Cir. 1997). Plaintiff does not allege that Soto authorized the infringing broadcast to support Soto's individual liability.

Alternatively, Plaintiff may establish vicarious liability by showing that Soto "had a right and ability to supervise that coalesced with an obvious and direct financial interest in the exploitation of copyrighted materials." Id. (citations and quotations omitted). To succeed under this theory, Plaintiff must offer more than a "formulaic recitation of the elements of a cause of action." Iqbal v. Ashcroft, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Rather, a well-pled complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Complaint alleges only that Soto is an "officer, director, shareholder and/or principal of Monte Limar Sports Bar Inc.," and that she had "a right and ability to supervise the infringing activities" and "an obvious and direct financial interest in the exploitation of the copyrighted materials complained of herein." Complt. at ¶¶ 5, 15. These generic allegations are based solely on Plaintiff's status as an officer, director, shareholder or principal of Monte Limar, and do not permit the Court to infer that she was positioned to supervise the infringing broadcast, or directly "participated in, authorized or ha[d] knowledge of the violation." Emily Bar Rest. Inc., 2016 WL 6495366, at *2.

Moreover, Plaintiff has not alleged that Soto had a direct financial interest in televising the Match. Plaintiff must make a stronger showing of financial gain to succeed. See e.g. LX Food Grocery, 2016 WL 6905946 at *3 (citing cases and noting that successful plaintiffs have either shown direct or strong indirect evidence of financial gain from the unauthorized broadcast). Here, there was no cover charge (ECF 15-2), and Plaintiff does not claim increased sales, that a premium surcharge was added, or allege facts from which to infer that Soto had an "obvious and direct financial interest" in the infringement. LX Food Grocery, 2016 WL 6905946 at *3; J & J Sports Prods. Inc. v. Johnny's Rest., No. 15-CV-6645 (NG)(ST), 2016 WL 8254906, at *4 (E.D.N.Y. Dec. 15, 2016), R&R adopted, 2017 WL 591143 (E.D.N.Y. Feb. 14, 2017).[2] Because Plaintiff has not pled a cause of action against Soto individually, the motion for default judgment against Soto is denied and the claims against her are dismissed.

### III. Damages

Plaintiff has established liability with regard to Monte Limar and is entitled to damages. Plaintiff seeks damages totaling $34,336.58. ECF 13, Memo. of Law ("MOL"), p. 18. For the reasons stated below, the Court awards statutory damages in the amount of $2,200.00 and costs of $452.50.

Damages require an independent evidentiary determination, Au Bon Pain, 653 F.2d at 65, during which the court must "ensure[] that there is a basis for the damages specified." Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989). Courts may not "just accept

---

[2] Plaintiff alleges that Soto is listed as the principal on Monte Limar's New York State liquor license and "had a direct financial gain in the infringing activities." Complt. at ¶ 15. The liquor license, at best, may suggest Soto's general supervision over the establishment, "but does nothing to suggest either that [Soto] had anything to do with the decision to display the [Match] . . . or that [s]he had an obvious and direct financial interest in the exploitation of the [Match]." El Ojo Aqua, 2014 WL 4700014, at *4; see also Johnny's Rest., 2016 WL 8254906, at *4.

[Plaintiff's] statement of the damages" on its face. Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997). Instead, the damage award must be based on evidence that "provide[s] a sufficient basis from which to evaluate the fairness of the proposed sum." Fustok, 873 F.2d at 40 (upholding damage award where the District Court "relied upon detailed affidavits and documentary evidence, supplemented by the District Judge's personal knowledge of the record"); see also Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991) (damages upheld where judge was "inundated with affidavits, evidence, and oral presentations by opposing counsel"); but see Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993) (remanding for further damage analysis where the district judge calculated damages from "a single affidavit only partially based upon real numbers").

A. *Statutory Damages*

Plaintiff seeks statutory damages in the amount of $9,695.00. Under 47 U.S.C § 605(e)(3)(C)(i)(II), Plaintiff may recover a per-violation recovery of an amount "not less than $1,000 or more than $10,000, as the court considers just." "Courts have interpreted the showing of an event on a single night as one violation." J & J Sports Prod., Inc. v. McAdam, No. 14-CV-5461 (PKC)(CLP), 2015 WL 8483362, at *4 (E.D.N.Y. Dec. 9, 2015). "The amount of damages to be assessed pursuant to Section 605 rests within the sound discretion of the court." J & J Sports Prods., Inc. v. El Sonador Café Rest. Inc., No. 15-CIV-6934 (NG)(VMS), 2017 WL 598534, at *7 (E.D.N.Y. Jan. 3, 2017), R&R adopted, 2017 WL 591169 (E.D.N.Y. Feb. 14, 2017).

Courts in this District use two methods to calculate damages under Section 605(e)(C)(i)(II), and the higher of the two amounts is generally awarded. J & J Sports Prods. Inc. v. GPN Bar Inc., No. 15-CV-6504 (FB) (ST), 2016 WL 8139019, at *5 (E.D.N.Y. Dec. 15,

7

2016), R&R adopted, 2017 WL 435785 (E.D.N.Y. Feb. 1, 2017). Under the "flat-fee" method, the Court awards the amount that the establishment would have paid to license the event and broadcast it legally. Id.; see also LX Food Grocery, 2016 WL 6905946 at *4. Here, the auditor's affidavit indicates that 100 patrons were in the establishment while the Match was televised. ECF 15-2.[3] Pursuant to the Rate Sheet, an establishment with a 100 person capacity would pay $2,200.00 to J & J for the rights to broadcast the Match. ECF 15-3; see also MOL at p. 10. Therefore, damages under the flat-fee method are $2,200.00.

Under the second method, the "per-person" method, the Court multiplies the number of patrons in the establishment by the fee that an average customer would pay to view the Match at home on a pay-per-view channel. McAdam, 2015 WL 8483362, at *4. Plaintiff alleges that $54.95 was the residential pay-per-view price to view the Match, and contends that the per-person method results in damages of $5,495.00, based on 100 patrons in the establishment multiplied by $54.95. MOL at p. 9; ECF 15, Hooten Aff., at ¶ 17.

There is no evidence to support the per-person damages Plaintiff seeks. The claimed award of $5,495.00 is based on an unsupported, speculative and questionable assumption that, had each of the unopposed 100 Monte Limar patrons stayed at home, he or she would have paid the cable provider $54.95 to view the bout. The only authority provided for that claim is the citation to other cases which granted that award. MOL at p. 9.[4] A cursory review of those other

---

[3] There is no explanation of how the auditor determined that 100 patrons were in the establishment, and the Court questions how she arrived at such a round number. See e.g. MOL at p. 3 (stating only that the auditor "observed that there were approximately One Hundred (100) patrons located on the premises"). Nonetheless, because that fact is alleged in a sworn, unchallenged affidavit, it is assumed true for the purpose of this motion.

[4] In each of the cited cases, the court applied $54.95 to the per-person damage calculation, even though Plaintiff did not offer evidence supporting that amount. Instead, the court relied on still more cases that applied $54.95. See Hot Shots, Inc., 2010 WL 3522809, at *2 ("In this district, courts have often multiplied the number of patrons by $54.95, the price an individual would pay

8

cases reveals no authority for the award other than citations to other cases, and so on, ostensibly relying on the same mythical assumption reminiscent of that slavish obedience to *stare decisis* of Max Radin, The Trail of the Calf, 32 Cornell L.Q. 137 (1946).[5] This is particularly problematic because the per-person method yields an amount more than double that yielded under the flat-fee method, respectively $5,495.00 and $2,200.00. For those reasons, the Court awards statutory damages of $2,200.00, as calculated under the flat-fee method.

The Court denies Plaintiff's request for additional damages of $2,000 for the loss of goodwill and future business. MOL at p. 10. Plaintiff has not explained how this amount was calculated, nor has Plaintiff offered a legal basis for it. LX Food Grocery, 2016 WL 6905946 at *4.

B. *Enhanced Damages*

Plaintiff also seeks enhanced damages, claiming that Monte Limar's infringement was willful. If an infringement "was committed willfully and for purposes of direct or indirect

---

to view the event at home on a pay-per-view channel."); J & J Sports Prods., Inc. v. Arhin, No. 07-CV-2875 (SJ), 2009 WL 1044500, at *6 (E.D.N.Y. Apr. 17, 2009) ("Although plaintiff has not submitted any evidence as to the residential rate for this broadcast, the typical purchase price for a pay-per-view broadcast of this nature is $54.95."); Garden City Boxing Club, Inc. v. Taqueria La Mixteca, Inc., No. 07-CV-4479 (FB)(RER), 2008 WL 4107130, at *2 (E.D.N.Y. Sept. 4, 2008) (despite Plaintiff's failure to offer evidence of the amount to apply, noting that "in a similar case involving a telecast of the same boxing match at issue here, Garden City introduced evidence that the residential price for viewing the boxing match was $54.95"); Kingvision Pay-Per-View Ltd. v. Cazares, No. 05-CV-2934 (DGT), 2006 WL 2086031, at *3 (E.D.N.Y. July 25, 2006) (noting that a "private residence would have been able to purchase the [] event for $54.95," and citing Plaintiff's Memorandum of Law which only cites to additional cases that apply $54.95).

[5] Radin's article begins with a poem by Sam Walter Foss, "The Calf-Path." The poem tells the tale of a primeval calf who leaves a crooked trail through the forest in its wake. As time passes, the trail is followed by a dog, then a sheep, men and horses. Eventually the winding path becomes a lane, then a road, a street and finally a thoroughfare. The poem ends as follows: "And men two centuries and a half / Trod in the footsteps of that calf. / For thus such reverence is lent / To well-established precedent. / But how the wise old wood-gods laugh, / Who saw the first primeval calf." 32 Cornell L.Q. at 137.

commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000." 47 U.S.C. § 605(e)(3)(C)(ii). It is not clear whether Monte Limar acted willfully in televising the Match. The courts in this District have differed in their finding of willfulness in these cases. Compare Emily Bar Rest., 2016 WL 6495366, at *3 ("The broadcast of an event without authorization is a deliberate act, and thus establishes willfulness.") to El Ojo Aqua, 2014 WL 4700014, at *6 ("An affirmative act can be done in good faith or bad, and the FCA explicitly recognizes that some violations . . . may be the result of an innocent mistake.").

In this instance, the Court need not address willfulness, because Plaintiff is not entitled to enhanced damages regardless. To determine whether willful conduct justifies an award of enhanced damages, the court considers "whether there is evidence of (i) repeated violations; (ii) significant actual damages suffered by the plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising of the event; and (v) defendant's collection of a cover charge or premiums for food and drinks." J & J Sports Prods., Inc. v. Big Daddy's Theme Palace, Inc., No. 14-CV-2765 (JG)(JMA), 2015 WL 58606, at *5 (E.D.N.Y. Jan. 5, 2015). None of these factors are present here. Plaintiff does not allege repeated violations by Monte Limar or that Monte Limar made significant monetary gains directly attributable to the televised Match; and Plaintiff's own evidence proves that Monte Limar did not advertise the Match, collect a cover charge or charge premiums for food and drink. See ECF 13-2; compare McAdam, 2015 WL 8483362, at *5 (enhanced damages awarded where defendant collected a $20 cover charge and advertised its exhibition of the event). As to the second factor, Plaintiff's only actual damages "are the lost licensing fee, which was already contemplated in the calculation of statutory damages above." GPN Bar Inc., 2016 WL 8139019, at *6.

Because there is no evidence that enhanced damages would be justified in this case, the Court declines to award them.

*C. Costs and Interest*

Finally, Plaintiff seeks to recover costs and a 9% prejudgment interest. Pursuant to Section 605(e)(3)(B)(iii), a court is required to "direct the recovery of full costs, including awarding reasonable attorney's fees to an aggrieved party who prevails." MOL at pp. 17-18. Plaintiff claims costs in the amount of $452.50, which represents the cost to file this case ($400) and to pay the process server ($52.50). Id. at p. 17; see also ECF 13-3. Plaintiff does not request attorney's fees. MOL at p. 18.

The Court may, in its discretion, award pre-judgment interest. However, prejudgment interest is not available if "the statutory obligation on which interest is sought is punitive in nature." Wickham Contracting Co. v. Local Union No. 3, IBEW, 955 F.2d 831, 834 (2d Cir. 1992). Courts in this District generally decline to award prejudgment interest on damages for Communications Act violations because statutory damages under that Act "are analogous to punitive damages." LX Food Grocery, 2016 WL 6905946 at *5 (citing cases). For that same reason, the Court declines to award prejudgment interest here.

In accordance with the mandate of Section 605, Plaintiff's costs are awarded in the amount of $452.50, without interest.

**CONCLUSION**

For the reasons stated herein, Plaintiff's motion for default judgment is granted in part and denied in part. As to defendant Monte Limar, the motion for default judgment is granted with respect to its liability under 47 U.S.C. § 605. Plaintiff is entitled to statutory damages of $2,200.00 and costs of $452.50, totaling $2,652.50.

11

As to defendant Yahaira Soto, the motion for default judgment is denied and the claims against her are dismissed. Any remaining claims in the Complaint are dismissed without prejudice.

SO ORDERED.

Dated:   Brooklyn, New York
         March 8, 2017

/s/
I. Leo Glasser